**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| OWEN OLSON, | &#124; |
| | &#124; |
|     Plaintiff, | &#124;    Case No. |
| vs. | &#124;    DEMAND TRIAL BY JURY |
| | &#124; |
| MONSANTO COMPANY, | &#124; |
| | &#124; |
|     Defendant. | &#124; |

## CLASS ACTION COMPLAINT

Plaintiff, OWEN OLSON, on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Monsanto Company for violations of the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*

## NATURE OF THE ACTION

1. Monsanto is the manufacturer of the ubiquitous herbicide known as Round*up*. Among other Round*up* products, Monsanto manufactures, markets, and sells in the Commonwealth of Pennsylvania Round*up* Weed & Grass Killer Concentrate Plus ("Round*up* Concentrate Plus") and Round*up* Weed & Grass Killer Super Concentrate ("Round*up* Super Concentrate") (Round*up* Concentrate Plus and Round*up* Super Concentrate will be referred to collectively as the "Round*up* Concentrates".) Unlike "Ready-to-Use" Roundup, the Round*up* Concentrates are intended to be diluted with water prior to use.

2. Since late 2012 or early 2013, Monsanto has advertised the Round*up* Concentrates as being capable of making a certain number of gallons, and as being

effective at addressing specific applications. For example, prominently at the top of the container in bold white numbers on a red background, the 32 fl. oz. size Round*up* Concentrate Plus advertises it makes 10 gallons of Round*up*, the 36.8 fl. oz. size advertises it makes 12 gallons of Round*up*, and the 64 fl. oz. size advertises it makes 21 gallons of Round*up*, as pictured below.

  

3. Those advertisements were false, however, because the Round*up* Concentrates were in fact only capable of making *half* the number of gallons represented on the front of the bottle when diluted with water to the strength required for the uses advertised on the label of each product, such as around flower beds and trees, on driveways and walkways, and along fences. Thus, for example, the 32 fl. oz. size Round*up* Concentrate Plus makes only 5 ⅓ gallons of Round*up* for the advertised uses (despite advertising 10 gallons), the 36.8 fl. oz. size makes only 6 ⅛ gallons of Round*up*

(despite advertising 12 gallons), and the 64 fl. oz. size makes only 10 ⅔ gallons of Round*up* (despite advertising 21 gallons). The same holds true for all sizes and variations of the Round*up* Concentrates - - each makes only between approximately 50% (for Round*up* Concentrate Plus) or 60% (for Round*up* Super Concentrate) of the amount promised.

4.      Plaintiff brings this action to recover actual damages for himself and other similarly-situated purchasers of the Round*up* Concentrates.

## JURISDICTION & VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from Monsanto. The Court also has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      The Court has personal jurisdiction over Monsanto as a result of Monsanto's substantial, continuous and systematic contacts with the State of Colorado and because Monsanto has purposely availed itself of the benefits and privileges of conducting business activities within Colorado.

7.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c), because Monsanto is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8.     Plaintiff, Owen Olson, is a resident of Denver, Colorado.

9.     Defendant Monsanto Company is a Delaware corporation with its principal place of business in St. Louis, Missouri.

## FACTS

10.     Monsanto is one of the world's largest agricultural companies, and has long been manufacturing and selling herbicides to control weeds.  Monsanto's leading herbicide is called Round*up*, whose active ingredient is called glyphosate. Monsanto first introduced Round*up* in the mid-1970s for the agricultural community, and then in the mid-1980s for residential use.  Round*up* has been a dramatically successful product, and is one of the most widely-used herbicides in the world for residential use.

11.     Monsanto manufactures, markets, and sells Round*up* in various formulations, including Round*up* Ready-to-Use formulations, which are intended simply to be sprayed directly out of the bottle in which the product is purchased; and concentrated versions of the Round*up*, such as the Round*up* Concentrates, which the purchaser must first dilute with water before using with a tank sprayer.

12.     Specifically, Monsanto manufactures, markets and sells Round*up* Concentrate Plus in 16 fl. oz., 32 fl. oz., 36.8 fl. oz., 40 fl. oz., 64 fl oz., and 128 fl. oz. bottles (as partially pictured in the Nature of the Action, *supra*), and Round*up* Super Concentrate in 35.2 fl. oz., 53.7 fl. oz, 64 fl. oz, and 128 fl. oz. bottles, as partially pictured below.

  

13.     The principal display panel of each of the Round*up* Concentrates prominently claims that that product "Makes Up to" a stated number of gallons, as follows.

| Product | Label Statement |
|---|---|
| Round*up* Concentrate Plus 16 oz. | "Makes Up to 5 Gallons" |
| Round*up* Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Round*up* Concentrate Plus 36.8 oz. | "Makes Up to 12 Gallons" |
| Round*up* Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |
| Round*up* Concentrate Plus 64 oz. | "Makes Up to 21 Gallons" |
| Round*up* Concentrate Plus 128 fl. oz. | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 35.2 oz. | "Makes Up to 23 Gallons" |
| Round*up* Super Concentrate 53.7 oz. (0.42 gal.) | "Makes Up to 35 Gallons" |
| Round*up* Super Concentrate 64 oz. (1/2 gal.) | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 128 oz. (1 gal.) | "Makes Up to 85 Gallons" |

14.     Directly under the Round*up* name, each Round*up* Concentrate label states "WEED & GRASS KILLER."  Further, directly under the Round*up* name and within a prominent geometric design with an eye-catching illustration, each Round*up*

Concentrate label also claims the product "**KILLS** THE ROOTS GUARANTEED."

A close-up of a Round*up* Super Concentrate label illustrating these elements is depicted below.



15.     Given the price of the Round*up* Concentrates in comparison to Ready- to-Use Round*up*, together with the purported number of gallons each Round*up* Concentrate makes, Monsanto markets the Round*up* Concentrates as better values than its Ready-to-Use products.

16.     A glossy several-page pamphlet is taped over the back label of each Round*up* Concentrate bottle, with its front page showing a graphic providing information under three headings, "Where to Use," "What to Know," and "How to Use."  Each one of the two backs of the bottles of the Round*up* Super Concentrate and Round*up* Concentrate Plus, respectively, with the taped pamphlet, is depicted below.

# Round*up* Concentrate Plus



# Round*up* Super Concentrate



17.    Close-up exemplars of this graphic for Round*up* Concentrate Plus, and Round*up*

Super Concentrate, respectively, are depicted below.

### **Round*up* Concentrate Plus**



**Round*up* Super Concentrate**



18.     As depicted above, the specific statements within each section of the graphic

are as follows:

**How to Use**

"Add 6 fl oz Per Gallon of Water" [Round*up* Concentrate Plus]

"Add 2 1/2 fl oz Per Gallon of Water" [Round*up* Super Concentrate]

"Use a Tank Sprayer"

**Where to Use**

"Along Fences"

"Driveways & Walkways"

"Around Trees"

"Around Flower Beds"

**What to Know**

"Rainproof in 30 Minutes"

"Visible Results in 12 Hours" [Round*up* Concentrate Plus]

"Visible Results in 2 to 4 Days" [Round*up* Super Concentrate]

"Plant 1 to 3 Days After Application (See booklet for details)"

19.     Given the dilutions set forth on the back panel of each Round*up* Concentrate, the number of gallons that Monsanto represents the Round*up* Concentrates are capable of making for the advertised uses is approximately *double* what they are actually capable of making when mixed with water according to Monsanto's own instructions.  Thus, the Round*up* Concentrates actually make about **half** the amount Monsanto claims, as demonstrated in the table below.

| Product | "Makes Up to" Gallon Promise | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Instructions |
|---|---|---|---|
| Concentrate Plus (16 oz.) | 5 gallons | 6 fl. oz. | 2.67 gallons |
| Concentrate Plus (32 oz.) | 10 gallons | 6 fl. oz. | 5.33 gallons |
| Concentrate Plus (36.8 oz.) | 12 gallons | 6 fl. oz. | 6.13 gallons |
| Concentrate Plus (40 oz.) | 13 gallons | 6 fl. oz. | 6.67 gallons |
| Concentrate Plus (64 oz.) | 21 gallons | 6 fl. oz. | 10.67 gallons |
| Concentrate Plus (128 oz.) | 42 gallons | 6 fl. oz. | 21.33 gallons |
| Super Concentrate (35.2 oz.) | 23 gallons | 2.5 fl. oz. | 14.08 gallons |
| Super Concentrate (53.7 oz.) | 35 gallons | 2.5 fl. oz. | 21.48 gallons |
| Super Concentrate (64 oz.) | 42 gallons | 2.5 fl. oz. | 25.6 gallons |
| Super Concentrate (128 oz.) | 85 gallons | 2.5 fl. oz. | 51.2 gallons |

20.     Sealed underneath the back-panel label page is a pamphlet that includes

additional information and instructions for use.

21.     The pamphlet taped to the back label of the bottles is sealed tightly, and only with careful effort is the pamphlet able to be removed and opened without being torn.

22.     As a result, most reasonable consumers would not feel permitted to unseal the pamphlet prior to purchase.  Thus, purchasers do not rely on any of the information contained within the sealed pamphlet, and they would not even see that information, *prior* to purchasing the Round*up* Concentrates.

23.     Even for those who have already purchased the product and then succeeded in removing the pamphlet, generally they do not feel the need to review the instructions on several pages of fine print before actual use, particularly since they have already seen the easy-to-read diagram with mixing instructions on the cover of the pamphlet prior to purchase.

24.     And even for those who do read the remainder of the pamphlet after purchase, it is only through a careful review of this pamphlet, including noticing a buried "fine print" instruction, that the customer may see the inconsistent statement from Monsanto that accounts for the prominent misrepresentation that overstates the number of gallons made.

25.     As an example, two internal pages of the several-page pamphlet for the 64 fl. oz. Round*up* Super Concentrate are depicted below:

## DIRECTIONS FOR USE

It is a violation of Federal law to use this product in a manner inconsistent with its labeling.

## PRODUCT FACTS    KILLS ALL TYPES OF WEEDS & GRASSES

**Makes up to 42 Gallons**          **Treats up to 12,750 sq ft**

**HOW IT WORKS:** Roundup® Weed & Grass Killer Super Concentrate is absorbed by the weed's leaves. It moves through the weed to the root, stopping the production of an essential enzyme found in plants (but not in humans or animals). Weeds die, roots and all - so they don't grow back. Kills only what you spray. Any product not absorbed by plants breaks down without moving in or on the soil to untreated plants. Weeds usually yellow and wilt within 2 to 4 days until complete kill in 1 to 2 weeks.

### WHERE TO USE
- On patios, walkways, driveways, gravel or mulch beds
- Around fruits, vegetables, flowers, shrubs or trees
- Along fences
- In large areas
  - For lawn replacement        - For garden plot preparation

## MIXING INSTRUCTIONS

**Tank Sprayer: Use of a Roundup® Brand Sprayer is recommended.** A plastic, fiberglass, plastic-lined steel or stainless steel sprayer may also be used.
- For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water.
- Spot treat or spray evenly over 300 sq ft.

For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water.

**Hose-End Sprayer:** For large areas, consider using the Ortho® Dial 'n Spray®
- Set dial to 2-1/2 oz.
- To sprayer jar add 2-1/2 fl oz (5 Tbs) for each 300 sq ft. **DO NOT** add water.
- Spray evenly over measured area.
- After spraying, unused product can be poured back into its original container.

1 Tablespoon (Tbs) = 3 teaspoons (tsp)          1 fl oz = 2 Tbs

Do not mix, store or apply with a galvanized or unlined steel (except stainless steel) sprayer, or through any irrigation system.

### HOW TO APPLY
- Spray the weeds or grasses you want to kill until thoroughly wet.
- When spot treating weeds around desirable plants, shield plants from drift with a sheet of cardboard or plastic. If desirable plants are accidentally sprayed, rinse off immediately with water.

**IMPORTANT: Do not spray plants or grasses you like – they will die.** Not recommended for spot weed control in lawns since glyphosate kills lawn grasses.

### WHEN TO APPLY
- Apply when weeds are actively growing.
- For best results, apply during warm, sunny weather (above 60° F) to accelerate systemic movement from foliage to roots.
- Apply when air is calm to prevent drift to desirable plants.
- RAINPROOF Protection: Rain or watering 30 minutes after application will NOT wash away effectiveness.
- If used to control weeds around fruit or nut trees, caneberries, or grapevines, allow 17 days before harvesting.

### WHEN TO REPLANT
- All ornamental flowers, trees and shrubs may be planted **1 day after** application.
- Lawn grasses, herbs, vegetables (all), and fruits may be planted **3 days after** application.

**HOW TO CLEAN SPRAYER:** To clean sprayer after use, rinse sprayer and all sprayer parts with water 3 times. Spray rinse water on bare soil or gravel. After cleaning, sprayer may be used for other products.

## ADDITIONAL TIPS

### To Kill Vines
- If vines are growing up poles, fences, or tree trunks with mature bark, cut vines to a height of 3 to 4 feet and spray vines thoroughly.
- If vines are climbing shrubs or tree trunks with green bark, cut vines at base and treat as directed for stumps or spray regrowth. If spraying regrowth, shield shrubs and tree trunks from spray drift with a sheet of cardboard or plastic.

### To Kill Bamboo
- Cut canes close to the ground.
- Make cut just below a stem joint to create a hollow stem reservoir.
- Pour 1 Tbs of undiluted product into the hollow stem reservoir.
- Browning of the canes will occur in 7-14 days.
- Spray foliage if regrowth occurs.

### To Kill Stumps
- Cut living stump close to ground.
- Drive 4 to 5 holes into freshly cut stump.
- Immediately pour undiluted product into holes.

**IMPORTANT:** Some trees may share the same root system. Adjacent trees having a similar age, height and spacing may signal a shared roots system. Injury may occur to non-treated trees when one or more trees sharing common roots are treated.

**For Lawn Replacement:** Use Roundup® Weed & Grass Killer Super Concentrate to kill a lawn and weeds before planting a new lawn.
- Skip one mowing before spraying.
- Use 2-1/2 fl oz (5 Tbs) per gallon of water for each 300 sq ft.
- If soil is dry, water before application and 2 to 3 days after application.
- If green patches remain after 7 days, reapply.
- Wait at least 3 days after last application to rake, till or replant with seed or sod.

26.    Notably, the pamphlet falsely restates, as the very first item under the heading, "PRODUCT FACTS - KILLS ALL TYPES OF WEEDS & GRASSES," that the product "Makes up to 42 Gallons." The pamphlet further states, as the first bullet under "Mixing Instructions," that, "For best results, add 2-1/2 fl. oz. (5 Tbs) to 1 gallon of water."

27.    Only when a purchaser reads further down into "Mixing Instructions" is the very first and only reference to the possibility of using a greater dilution, wherein it states, "For easy to kill weeds such as seedlings, add 1-1/2 fl. oz. (3 Tbs) to 1 gallon of water."

28.    A reasonable purchaser - - for example, an ordinary homeowner interested in removing weeds along a fence, on a driveway, or around trees or flower beds - - would not open the sealed pamphlet prior to purchase and then upon purchasing the product and reading the entire pamphlet understand what constitutes an "easy to kill weed".

29.    To the contrary, a reasonable consumer would instead rely on Monsanto's representation that "for best results, add 2-1/2 fl. oz. (5 Tbs) to 1 gallon of water," especially inasmuch as this is consistent with the prominent graphic on the product's rear panel (which is also the cover to the pamphlet), set forth adjacent to the product's advertised intended uses.

30.    Reasonable consumers read and understand "up to" representations - - like the "Makes Up to" a specific number of "Gallons" representations on Round*up*

14

Concentrates - - as providing, under normal and reasonable conditions for use, the maximum results promised. Indeed, the U.S. Federal Trade Commission has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."

31.    As demonstrated by the pamphlet itself, including its cover, use of the product only on "weeds such as seedlings" is not normal use.  Rather, normal use is as represented on the pamphlet's cover, and of course on the front of the bottle: as a "WEED AND GRASS KILLER," that "KILLS ALL TYPES OF WEEDS & GRASSES," and is to be used "Along Fences," on "Driveways & Walkways," "Around Trees," and "Around Flower Beds," wherein the use is "GUARANTEED" to "KILL THE ROOTS."

32.    Reasonable consumers should not be expected to notice, and then engage in the math necessary to determine that, following the dilution instructions provided on the back of the label of each Round*up* Concentrate, the product only makes half the amount stated prominently on the front.

33.    Moreover, even for the rare consumer that might engage in the math and notice the discrepancy, no explanation is provided except the single, small-print sentence buried in the pamphlet, and so the labeling remains confusing, and ambiguous as to whether, and under what circumstances, the product  "Makes

Up to" the amount stated, and at what point the efficacy of the product becomes less than what the consumer believes it to be, or not efficacious at all.

## PLAINTIFF'S PURCHASE

34.     In April 2015, Plaintiff purchased a bottle of the Round*up* Super Concentrate. Plaintiff purchased the product at a local retailer.

35.     Plaintiff purchased the Round*up* Super Concentrate as opposed to the Ready-to-Use product.

36.     Plaintiff purchased the Round*up* Super Concentrate for personal use.

37.     Plaintiff purchased the 35.2 fl. oz. bottle of Round*up* Super Concentrate because Monsanto advertised that the concentrated product would make up to 23 gallons. The Round*up* Super Concentrate cost about $50. Plaintiff estimated the product would be sufficient for his personal use.

38.     Plaintiff estimated that 23 gallons would yield a sufficient amount of finished product to kill the weeds and grass.

39.     Plaintiff did not tear open the pamphlet on the back of the bottle before purchasing the product.  When Plaintiff purchased the product, he believed the pamphlet contained the same information that was displayed on the outside of the bottle.  Before purchasing the product, Plaintiff did not believe that it would be appropriate to tear open the pamphlet on the back of the bottle.

40.     Plaintiff purchased the Round*up* Super Concentrate because given the size of the area he needed to treat, it was expected that the Round*up* Super Concentrate

would be a better value than the Ready-to-Use product and because he expected the finished product would yield 23 gallons.

41.     Plaintiff mixed the product with water according to the graphic on the back of the bottle and the instructions inside the pamphlet (i.e., 2 1/2 fl. oz. of concentrate per gallon of water).

42.     When purchasing Round*up* Super Concentrate, Plaintiff was seeking a product that was effective at killing all unwanted weeds and grass, and which was more affordable than the Round*up* Ready-to-Use products. Plaintiff understood that he was purchasing a concentrate with a substantially better dollar-per-gallon value than the Ready-to-Use alternative (*i.e.*, the value that would be had if the product supplied the maximum number of gallons). Moreover, Plaintiff was seeking a product that would yield 23 gallons of finished product that would kill all unwanted weeds and grass, including a product that "KILLS THE ROOTS" … "GUARANTEED".

43.     Those representations, upon all of which Plaintiff relied in purchasing the product, however, were false and misleading.  That is because, as described in detail herein, the Round*up* Concentrates *do not* yield the volume, in gallons, as promised if following the instructions for the advertised uses prominently stated on the product's back panel.

44.     By representing the *amount* of finished product Plaintiff was supposedly buying, Monsanto implicitly also represented the product's value to Plaintiff. That representation, however, was false because, based on Monsanto's prominent

mixing instructions, the Round*up* Super Concentrate was effectively under-filled, such that Plaintiff received a different and substantially lesser value - - and, one with a higher cost - - than Monsanto represented. In effect, Plaintiff received half the product he believed he purchased. Accordingly, Plaintiff did not realize the benefit of his bargain and his expectations were not met.

45. In addition, Plaintiff paid substantially more than the market value represented by the price he and Monsanto bargained for. Like other class members, Plaintiff bargained with Monsanto on a particular market value for a certain number of gallons of Round*up* made by diluting the Round*up* Super Concentrate. But because Monsanto only delivered a portion of those gallons, Plaintiff paid a price-per-gallon that was significantly higher than reflected in the market price to which he and Monsanto agreed, and he received a number of gallons that was significantly less than what Monsanto promised. For those reasons, the Round*up* Super Concentrate Plaintiff purchased was worth less than what he paid for it.

46. Thus, through use of the misleading representation as to the amount of product provided and thereby its value, Monsanto obtained enhanced negotiating leverage allowing it to command a price Plaintiff and other class members would not have paid had they been fully informed. Specifically, Plaintiff and other Class members would have paid approximately 50% less for Round*up* Concentrate Plus, and 40% less for Round*up* Super Concentrate, had they paid the agreed-upon market price for the number of gallons actually received.

47.     Absent the false and misleading labeling complained of herein, Plaintiff and other Class members would only have been willing to pay less for the Round*up* Concentrates.

48.     Plaintiff and other Class members lost money as a result of Monsanto's deceptive claims and practices in that they did not receive what they paid for when purchasing the Round*up* Concentrates.

49.     Plaintiff and other Class members detrimentally altered their position and suffered actual damages in an amount of the under-filled portion of the Round*up* Concentrate purchases.

## CLASS ACTION ALLEGATIONS

50.     While reserving the right to redefine or amend the class definition prior to seeking class certification, including seeking bifurcation of issues that are not amenable to resolution on a class wide basis pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a Class of all persons who, on or after April 2012 (the "Class Period"), purchased in the State of Colorado, for personal or household use and not for resale or distribution, Roundup Weed & Grass Killer Concentrate Plus, or Roundup Weed & Grass Killer Super Concentrate, in packaging whose label stated that the product "makes up to" a specified number of gallons, specifically as follows:

| Product | Label Statement |
|---------|-----------------|
| Round*up* Concentrate Plus 16 oz. | "Makes Up to 5 Gallons" |
| Round*up* Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Round*up* Concentrate Plus 36.8 oz. | "Makes Up to 12 Gallons" |
| Round*up* Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |

| | |
|---|---|
| Round*up* Concentrate Plus 64 oz. | "Makes Up to 21 Gallons" |
| Round*up* Concentrate Plus 128 fl. oz. | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 35.2 oz. | "Makes Up to 23 Gallons" |
| Round*up* Super Concentrate 53.7 oz. (0.42 gal.) | "Makes Up to 35 Gallons" |
| Round*up* Super Concentrate 64 oz. (1/2 gal.) | "Makes Up to 42 Gallons" |
| Round*up* Super Concentrate 128 oz. (1 gal.) | "Makes Up to 85 Gallons" |

51.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court.

52.     Questions of law and fact common to Plaintiff and the Class include:

a.      Whether Monsanto's use of the phrase "Makes up to # gallons" creates a likelihood of deception or has the capacity to deceive when read in conjunction with the mixing instructions on the back panel of the Round*up* Concentrate products;

b.      Whether Monsanto engaged in an unfair or deceptive trade practice; and

c.      Whether Monsanto's deceptive use of the phrase "Makes up to # gallons" significantly impacted the public as actual or potential consumers of Round*up* Concentrate products.

53.     Those common questions of law and fact predominate over questions that

affect only individual Class members.

54.     Plaintiff's claims are typical of Class members' claims because they are based on the same underlying facts, events, and circumstances relating to Monsanto's conduct.  Specifically, all Class members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Round*up* Concentrates, and suffered actual damages because Round*up* Concentrates are misrepresented in the same manner.  Absent Monsanto's business practice of deceptively and unlawfully labeling the Round*up* Concentrates, Plaintiff and other Class members would have paid less for the products.

55.     Plaintiff will fairly and adequately represent and protect the interests of the Class; he has no interests incompatible with the interests of the Class; and he has retained counsel competent and experienced in class action litigation.

56.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small, such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

57.     As a result of the foregoing, class treatment is appropriate under  Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3). In addition, it may be appropriate, pursuant to Fed. R. Civ. P. 23(c)(4), to maintain this action as a class action with respect to particular issues.

## CAUSE OF ACTION

### Count I
### Violation of the Colorado Consumer Protection Act,
### C.R.S.A. §6-1-101, *et seq*.

58.     The Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq*., makes

it unlawful to engage in unfair or deceptive trade practices.   C.R.S.A. § 6-1-105.

59.     As detailed throughout Plaintiff's Complaint, Defendant Monsanto,

represented: that its Round*up* Concentrate Plus 16 fl. oz. makes up to 5 gallons;

that its Round*up* Concentrate Plus 32 fl. oz. makes up to 10 gallons; that its

Round*up* Concentrate Plus 36.8 fl. oz. makes up to 12 gallons; that its Round*up*

Concentrate Plus 40 fl. oz. makes up to 13 gallons; that its Round*up* Concentrate

Plus 64 fl. oz. makes up to 21 gallons; and that its Round*up* Concentrate Plus 128

fl. oz. makes up to 42 gallons.

60.     Defendant Monsanto also represented: that its Round*up* Super Concentrate

35.2 fl. oz. makes up to 23 gallons; that its Round*up* Super Concentrate 53.7 fl.

oz. makes up to 35 gallons; that its Round*up* Super Concentrate 64 fl. oz. makes

up to 42 gallons; and that its Round*up* Super Concentrate 128 fl. oz. makes up to

85 gallons.

61.     But, Defendant's representations about its Round*up* Concentrate Plus and

Round*up* Super Concentrate were false and misleading.  Round*up* Concentrate

Plus and Round*up* Super Concentrate actually make up only about half the

advertised number of gallons.

62.     The Round*up* Concentrates create a likelihood of deception and have the

capacity to deceive, especially when read in conjunction with the mixing instructions on the back panel of the Round*up* Concentrate products.

63. Defendant violated the Colorado Consumer Protection Act by misrepresenting the actual amount of finished product made using the instructions on the label with the intent that Plaintiff and the Class rely on them and purchase its products.

64. Plaintiff and the Class were damaged by Monsanto's deceptive practices and their subsequent purchases of Round*up* Concentrates. Plaintiff and the Class would not have purchased Round*up* Concentrate Plus and Round*up* Super Concentrate or paid the price they did, had the true facts been known.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself, all others similarly situated, prays for judgment against Defendant, Monsanto Company, and the following remedies:

a. An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing his undersigned counsel as class counsel;

b. An Order requiring Monsanto to bear the cost of class notice;

c. An Order compelling Monsanto to conduct a corrective advertising campaign;

d. An Order requiring Monsanto to pay all actual, compensatory, and punitive damages (as allowed by law) permitted under the Colorado Consumer Protection Act;

e.     Pre- and post-judgment interest (as allowed by law);

f.     An award of attorneys' fees and costs (as allowed by law); and

g.     Such other and further relief for Plaintiff and the Class as the Court deems appropriate and just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

By:   /s/ David Ford

David Ford
530 Galapago St.
Denver, Co 80204
T: (303) 704-6655
daoford@gmail.com
Colorado Bar #38187

Martin Jerisat
Jerisat Firm
1600 N. Broadway St., Ste. 650
Santa Ana, CA 92706
T: (714) 571- 5700
T: (312) 332- 0333
F: (844) 362- 6610
mjerisat@jlawoffices.com
Colorado application for admission
forthcoming

Aaron Rapier
Dario Dzananovic
Rapier Law Firm
1770 Park St., Suite 200
Naperville, IL 60563
T: (815) 782-5478
F: (815) 327-3449
arapier@rapierlawfirm.com
Colorado application for admission
forthcoming

*Attorneys for Plaintiff and all
others similarly situated*